HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. SILAS W. PORTER,
HON. JUDSON S. WEST,
HON. JOHN MARSHALL,
HON. JOHN S. DAWSON,
} JUSTICES.

No. 21,056.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GREELEY, *Plaintiff,* v. W. E. DAVIS, as State Auditor, etc., *Defendant.*

SYLLABUS BY THE COURT.

1. HIGH-SCHOOL BONDS — *Statutory Procedure Must Be Followed.* Where a series of statutes dealing with a particular subject forms a complete and independent method for guidance to official action the procedure therein prescribed must be substantially followed, and the failure to follow such procedure can not be remedied by invoking other general statutes which do not pertain to that particular subject.

2. SAME—*Authority of County Commissioners to Call Election—Statutes Construed.* The authority of a board of county commissioners to call an election to vote bonds for a county high school in a county of less than six thousand population is the statute which deals with that particular subject, and not the general statute conferring power on the county board to determine, at its discretion, the necessity for permanent county buildings and to call an election to vote bonds therefor.

3. SAME — *Commissioners' Authority to Call Election — Dependent upon Presentation of Petition Therefor.* Where a statute provides that upon presentation of a petition of twenty-five per cent of the legal voters of a county asking for an election on a proposed bond issue to build a county high school it shall become the duty of the board of

1—99 KAN.

county commissioners to call such election, the presentation of such petition is a condition precedent to lawful action by the board; and an election held on call of the county board without such petition is void, and the registration of bonds thus irregularly voted for can not be compelled by a writ of mandamus.

Original proceeding in mandamus. Opinion filed November 1, 1916. Writ denied.

*W. M. Glenn,* of Tribune, for the plaintiff.

*S. M. Brewster,* attorney-general, for the defendant; *James P. Coleman,* of Topeka, of counsel.

The opinion of the court was delivered by

DAWSON, J.: The board of county commissioners of Greeley county applies to this court for a writ of mandamus to require the state auditor to register a bond issue for $10,000 to pay for a county high-school building recently erected in Greeley county, pursuant to a special election called by the plaintiff board on May 15, 1916, and which was held on August 1, 1916. Greeley county for some years past has maintained a county high school under the acts of 1897 (Laws 1897, ch. 180, Gen. Stat. 1909, §§ 7785-7789) and 1903 (Laws 1903, ch. 433, Gen. Stat. 1909, § 7784) authorizing counties of less than six thousand population to establish and maintain county high schools.

The respondent auditor declines to register the bonds; and counsel for both parties have signed and filed the following stipulation:

"It is hereby stipulated and agreed by and between the parties hereto, that the sole and only questions involved in the above entitled action are as follows:

"First: Whether or not the board of county commissioners of Greeley county have authority under the provisions of sections 2078 to 2083 of the General Statutes of Kansas of 1909, to issue bonds for the purpose of erecting a county high school building for the use of a county high school legally established under the provisions of chapter 180 of the Laws of 1897, as amended by chapter 433 of the Laws of 1903, and Sections 7784 to 7789 inclusive of the General Statutes of Kansas of 1909.

"Second: It is further stipulated and agreed that the transcript leading up to the issuance of the bonds offered for registration shows a compliance with sections 7802 to 7806 of the General Statutes of Kansas of 1909, with the exception of the fact that no petition was ever presented

to the board of county commissioners as provided in section 7803 and that the question was submitted at a special election held on the first day of August, 1916, instead of the general election in November, 1916."

Section 2078 of the General Statutes of 1909, under which the plaintiff board proceeded to act, provides:

"The board of county commissioners of any county may determine, in their discretion, when the erection of any permanent building or buildings for the use of the county is necessary, and they shall also determine the cost of the erection thereof, and the same shall be entered on the journal, but no tax shall be levied, bonds issued or other obligations incurred on account of the erection of such building or buildings, until after the question has been submitted to the electors of said county at some general election or at a special election held for that purpose," etc.

It may well be doubted whether even the broad language of this statute would warrant us in saying that "any permanent building or buildings for the use of the county" would include a county high-school building, if this statute stood alone and was not affected by other specific enactments pertaining to county high-school buildings. We have been so accustomed in this state for half a century to consider the term "county buildings" to mean the court house, the poor house and the jail that an illustration of any other sort of county building within the meaning of this statute does not readily suggest itself. But this statute does not stand alone. There is another statute, and that is one which deals with the specific subject of county high-school buildings, particularly in counties like Greeley. The county high school in Greeley county was established by virtue of chapter 180 of the Laws of 1897, which provided that in sparsely settled counties (having less than twenty-five hundred population) the county commissioners might enter into arrangements with the school district at the county seat for establishment of a county high school. As population in these sparsely settled counties increased, this act of 1897 was amended to provide that any county of less than six thousand population could establish a county high school in connection with the district school at the county seat. (Laws 1903, ch. 433, Gen. Stat. 1909, § 7784.)

By means of these statutes county high schools became common and familiar institutions, but as population continued to increase and the county-seat district schools came to need all their school accommodations for their own district pupils it

was considered by the legislature that more adequate provision should be made for housing the pupils of these county high schools. To this end the legislature in 1907 enacted:

"SECTION 1. That any county which has established a county high school under the provisions of chapter 180, Session Laws of 1897, as amended by chapter 433, Session Laws of 1903, is hereby authorized and empowered to issue and sell bonds of the county for the purpose of erecting, furnishing and equipping a building for the use of the county high school of the county; provided, that no bonds shall be issued as provided for in this section until the same has been submitted to the electors of the county at a general election, or at a special election called for that purpose, and a majority of the voters voting upon the proposition shall have voted in favor of the same.

"SEC. 2. When a petition signed by twenty-five per cent. of the legal voters of the county, as shown by the latest official poll of the county, shall have been presented to the board of county commissioners of the county, asking that the question of issue of the bonds for the purpose named in this act be submitted to a vote of the people, it shall become the duty and is hereby made the duty of the board of county commissioners to make provisions to submit the question to a vote of the people; provided, that if a general election is to be held within six months after the receipt of the petition, the board of county commissioners shall submit the question at the next general election; otherwise, the board of county commissioners shall call a special election for this purpose, by giving not less than thirty days' notice by publication in not less than four issues of a newspaper of general circulation in the county." (Laws 1907, ch. 332, §§ 1, 2, Gen. Stat. 1909, §§ 7802, 7803.)

It will be observed that the acts of 1897, 1903 and 1907 form a complete and independent program for the establishment of county high schools and for housing high-school pupils in counties of less than six thousand population. These acts need no aid from the general statute (§ 2078 *et seq.*) authorizing boards of county commissioners to determine, at their discretion, the necessity for permanent county buildings and to call a bond election to provide funds therefor. And since the high-school acts provide their own procedure for setting in motion the processes by which a county high-school building may be procured, such processes are exclusive. One of these was the presentation of a petition to the board of county commissioners "signed by twenty-five per cent. of the legal voters of the county." No such petition was submitted, consequently the statutory basis on which the county board called the election was wanting. The election was therefore called without lawful authority and its result is void.

We have sought diligently but without avail to escape this conclusion. The necessity of a petition and that it must sufficiently conform to statutory requirements has often been held to be a condition precedent to the validity of an election if the statute provided that the authority or duty to call the election depended upon the presentation of a petition to invoke the election machinery. (*The State, ex rel., v. Comm'rs of Phillips County*, 26 Kan. 419; *The State, ex rel., v. Eggleston*, 34 Kan. 714, 10 Pac. 3; *The State, ex rel., v. Stock*, 38 Kan. 154, 16 Pac. 106; *The State, ex rel., v. Comm'rs of Rawlins Co.*, 44 Kan. 528, 24 Pac. 955.)

In *Comm'rs of Wyandotte Co. v. Barker*, 45 Kan. 699, 26 Pac. 591, where the county board had assumed to establish a public road and to levy special assessments against the property benefited thereby, the statute provided that whenever a majority of the resident land-holders should petition the county board, it was the duty of the board to proceed, etc. This court said:

"It would seem, on principle, that the requirement of this statute that a majority of the resident land-holders within the limit must sign the petition for improvement, is not only imperative and must be always complied with, but the power of the board to order the improvement can not be exercised unless the petition contains the names of that majority. The best reason for this is, because the statute says so, and if you once depart from the plain letter of the act, and say that five land-holders out of twenty-one can compel action by the board, then any number less than a majority may do so." (p. 703.)

In 15 Cyc. 319, it is said:

"Statutes of this description usually make the presentation of a petition to some local authority the initial step for holding such election; and where a statute provides for the calling of a special local election to vote upon a proposition to determine some question, such as a subscription for corporate stock, an issue of bonds, the licensing and sale of spirituous liquors, whether live stock shall run at large, or the like, upon the presentation of a petition to a designated officer or authority, the presentation of such petition is a condition precedent to holding an election; and it must be signed by the number of qualified persons prescribed by the statute, otherwise the election will be void."

How disastrous is the failure to comply strictly with necessary conditions precedent to official action may be noted in *The State v. Bentley*, 80 Kan. 227, 101 Pac. 1073, and cases there cited.

Another infirmity in the proceedings leading up to this proposed issue of bonds is urged. The action of the board of county commissioners calling the election was taken on May 16, 1916. The statute provides that if a general election is to be held within six months of the time when the board receives the petition, the proposition to issue the bonds shall be submitted at the general election. The general election occurred on November 7, 1916, and consequently within six months. The bond election was held in conjunction with the regular primary election, August 1, 1916. If we could surmount the much graver difficulty with this bond issue already discussed, we might be disposed to hold that the purpose of this provision of the statute was in the interest of economy, and that the electorate were not to be bothered with a special bond election if they were to meet within six months in the ordinary exercise and discharge of their suffrage privileges and duties, and that the regular biennial primary would answer the purpose of this statute in that regard. But the want of the statutory petition to authorize the calling of the election being fatal to all the subsequent proceedings, this latter point need not be positively decided.

We realize the unfortunate predicament in which this result leaves the parties interested, but neither the auditor nor this court can remedy it. It can do no harm, however, and it may help, to cite *Lewis v. Comm'rs of Bourbon County,* 12 Kan. 186, 216, 220, and the effect of the act of February 25, 1868 (Gen. Stat. 1868, ch. 84, p. 829).

(See, also, *Bank v. Reilly,* 97 Kan. 817, syl. ¶ 8, 827, 156 Pac. 747, and *The State, ex rel., v. Deming,* 98 Kan. 420, 423, 426, 158 Pac. 34.)

The writ is denied.