TINDALL *v.* SEARAN.

4-4229

Opinion delivered February 10, 1936.

174

*Geo. F. Hartje, O. M. Young* and *W. A. Leach,* for appellants.

*A. G. Meehan, J. W. Moncrief* and *M. F. Elms,* for appellees.

MEHAFFY, J. At the general election held on November 6, 1934, the qualified electors of Arkansas County initiated and adopted a salary act fixing the salaries of all county officers except surveyor and coroner. The initiated act itself provided that it should become effective on January 1, 1935, and after January, 1935, the salaries fixed in said act have been received by the county officers.

On October 7, 1935, this action was brought by J. W. Searan, as a taxpayer, against the county officers, naming them. The purpose of the suit was to have the salary act declared void and ineffective.

On November 4, 1935, the county officers who were made defendants filed a general demurrer to each separate paragraph of the complaint, and on the same day A. A. Tindall and others, as taxpayers of Arkansas County, intervened and also filed a demurrer to the entire complaint and to each paragraph.

On November 11, 1935, the court overruled the demurrers, and the appellees declined to plead further, whereupon final judgment was entered holding said act to be void and of no effect, and a restraining order was issued, as prayed in the complaint. The case is here on appeal.

The complaint alleged that the salary act was void for many reasons, and attention will be called to the reasons given.

The appellees insist that the questions raised here were not presented either to the trial court or this court in the case of *Dozier* v. *Ragsdale,* 186 Ark. 654, 55 S. W. (2d) 779, nor in any other suit involving the validity of such an act. It is earnestly argued that the questions here raised are controlled by the opinion of this court in *State ex rel. Little Rock* v. *Donaghey,* 106 Ark. 56, 152 S. W. 746.

The only thing decided in the last-mentioned case was whether more than three amendments could be submitted at any one election. The Initiative and Referendum Amendment that had been adopted provided that constitutional amendments might be submitted by the people. Said amendment stated that the people of the State reserved to themselves power to propose laws and amendments to the Constitution, etc. The court held in the Donaghey 'case, *supra,* that the previous provisions of the Constitution are to be harmonized when not necessarily inconsistent or repugnant, and that, since the Constitution authorized only three amendments, to harmonize the amendment with the Constitution, only three amendments could be submitted, both by the Legislature and the people, and that the first three submitted, if adopted, if more than three were submitted, became a part of the Constitution.

Section 22 of article 19 of the original Constitution provided that either branch of the General Assembly might propose amendments to the Constitution, but that no more than three amendments shall be proposed or submitted at the same time. And, as already said, the court concluded that, when the amendment was considered together with the Constitution, only three amendments could be submitted. After this decision, another initiative and referendum amendment was submitted to the people at the general election, November 2, 1920. This last initiative and referendum amendment expressly provides that no limitation shall be placed upon the number of constitutional amendments.

It is contended by the appellees that a local act cannot be adopted by a county concerning a matter over

which the General Assembly is given exclusive and mandatory control by the Constitution, and that in a recent case this court said: ''The Constitution provides that the Legislature, not the quorum court, shall fix the number of deputies and their salaries. * * * We think, when the whole case is read, there can be no question but what it holds that the Legislature, and not the quorum court or any other body, has the authority to fix the number of deputies and their compensation.''

In this connection appellees refer to the case of *Pulaski County* v. *Caple*, 191 Ark. 340, 86 S. W. (2d) 4. We were discussing there § 4 of article 16 to the Constitution of the State of Arkansas. That provision of the Constitution was adopted long before the initiative and referendum amendment was adopted, and when the legislative powers of the people was vested alone in the General Assembly. No one would contend now that the people of the State did not have the right under the Initiative and Referendum Amendment to adopt a law fixing the number of deputies and their compensation. Any law that the General Assembly could have enacted prior to the adoption of the Initiative and Referendum Amendment may now be adopted by the people independent of the action of the Legislature. In other words, the number of deputies and their compensation is to be fixed by law, and authority to fix salaries cannot be delegated to the quorum court or any other body.

Appellees say that it does not appear in the opinion in the case of *Dozier* v. *Ragsdale, supra,* that the question of the constitutionality of the act was raised. We did say, however, in that case: ''In 1910 the people of Arkansas adopted a constitutional amendment reserving the right and power to themselves to propose legislative measures, laws and amendments to the Constitution and to enact or reject the same at the polls, independent of the General Assembly. That amendment undertook to provide for local legislation, but it read: 'The people of each municipality, each county, and of the State, reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls, independent of the General Assembly,' etc.

"No one doubted at that time, and no one doubts now, that the people, in adopting this amendment thought they were providing for local legislation in counties by initiating acts. But it will be observed that the reservation of power and authority to initiate and enact laws was in the same paragraph that the power was reserved to enact constitutional amendments, and this court held that that part of the amendment adopted in 1910 was meaningless." *Dozier* v. *Ragsdale, supra.*

The present Initiative and Referendum Amendment was adopted in 1920. The fact that the people adopted this provision a second time, and having written it in such plain language that it cannot be misunderstood by any one, shows clearly that the people intended to reserve to themselves the right to pass all local laws affecting the counties.

Moreover, in 1926 the people of the State initiated and adopted an amendment to the Constitution which prohibited the General Assembly from passing any local or special act. Therefore there is no possible way to pass a local act except under the provisions of the Initiative and Referendum Amendment. They have not only reserved this right to themselves, but have prohibited the General Assembly from passing any local law. It was contended in the Union County case that the measure adopted by Union County was contrary to the general law of the State, and therefore violative of the constitutional amendment which prohibits counties from enacting local legislation contrary to the general law of the State.

We have repeatedly held that, when one or more counties is exempt from any law, this exemption makes the law local. It is a matter of common knowledge that several counties in the State of Arkansas have adopted local acts fixing the numbers of officers and the salaries for the county, and there is no general law that conflicts with this act.

The Legislature, in 1933, passed act 159. This undertook to classify counties, and directed the State Treasurer to divide all the revenue in the county highway funds among all the counties in the State, fixing as a

basis for the division the population, car license revenue, and the areas of the various counties. It also provided that, in counties having more than one judicial district and a population of not less than 65,000, the funds allowed those counties should be divided between the judicial districts on the basis of the mileage of county maintained roads. We held that this act was void because it was a local act, applied to Mississippi County alone, and we also held that the Legislature could not adopt a classification arbitrarily upon a ground which has no foundation in difference of situation or circumstances, and that a statute which exempted one county is a local act. *Leonard* v. *Luxora-Little River Road Maintenance District No. 1,* 187 Ark. 599, 61 S. W. (2d) 70.

There are some other acts of the session of 1933 fixing the fees that county officers shall charge for certain work, but it does not undertake to fix salaries or compensation for county officers.

We held in *Smith* v. *Cole,* 187 Ark. 471, 61 S. W. (2d) 55, that an act fixing salaries of county officials in all counties except Union was a local act. This act was passed in 1933.

We think all the questions in this case were necessarily decided in the case of *Dozier* v. *Ragsdale, supra,* and in the case of *Reeves* v. *Smith,* 190 Ark. 213, 78 S. W. (2d) 72.

Under the Initiative and Referendum Amendment the people of the county could not enact a law contrary to a general law which operated uniformly throughout the State. The expenses of the county are of special interest to the taxpayers in the particular county where the law is enacted. The fixing of salaries and compensation to be paid county officers is of peculiar interest to taxpayers of the county, and it was legislation of this kind that the people intended to provide for. No local matter could be more important to them.

It is argued that the people of a county could not initiate and adopt a law for contesting the election of officers. Of course a county could not do this, but the people of the State could, or the Legislature could. This

would be a general law, but the fixing of the salaries and compensation and regulating the expenses of the counties is an entirely different matter. Even when those salaries were fixed by the Legislature, the number of officers and deputies in each county and their salaries were fixed, not uniformly throughout the State, but according to the needs of each particular county, and if it provided for fixing fees and salaries in the seventy-five counties, the act would be different as it applied to each county.

We have already held, however, that acts of this character are not only local, but of peculiar interest to the taxpayers of the county. As we have said, there are several counties which have enacted local salary laws, and this court said: "Now if a general law must apply throughout the territorial limits of the State, the exclusion of one or more counties from its provisions makes it a local statute." *Smith* v. *Cole,* 187 Ark. 471, 61 S. W. (2d) 55.

This court recently said: "Another reason not less cogent is that Amendment No. 7 permits the exercise of the power reserved to the people to control to some extent at least the policies of the State, but more particularly of counties and municipalities as distinguished from the exercise of similar power by the Legislature, and, since that residum of power remains in the electors, their acts should not be thwarted by strict or technical construction." *Reeves* v. *Smith, supra.*

Appellees cite many authorities on the construction of statutes and constitutional amendments, but we do not discuss them because this court has repeatedly construed the Initiative and Referendum Amendment, and when a court has construed a provision of the Constitution, this construction should be followed unless there is some manifest reason for holding otherwise.

"A cardinal rule in dealing with Constitutions is that they should receive a consistent and uniform interpretation so that they shall not be taken to mean one thing at one time and another thing at another time, even though the circumstances have so changed as to make a different rule seem desirable. In accordance with this principle,

a court should not allow the facts of the particular case to influence its decision on questions of constitutional law, nor should a statute be construed as constitutional in some cases and unconstitutional in others, involving like circumstances and conditions.'' 6 R. C. L. 46.

No one doubts that the people, in adopting the Initiative and Referendum Amendment, intended to reserve to themselves the power to control their local affairs, and there is nothing more important to the taxpayers of a county than the regulation of its officers, their compensation, and the expenses of the county.

The initiated act of Arkansas County is not in conflict with any general law, and is not in conflict with any provisions of the Constitution.

Appellee argues that the Constitution of the State has conferred upon the General Assembly by particular and affirmative direction and words the power and duty of fixing all salaries of all officers in the State. That is true, and, prior to the adoption of the Initiative and Referendum Amendment, there was no lawmaking body that could fix these salaries except the Legislature, but in the amendment the people reserve to themselves the right to enact all laws independent of the Legislature. It will not be contended that the people of the State could not initiate and adopt a law fixing the compensation of officers.

The Initiative and Referendum Amendment, like all other amendments, must be construed together with the provisions in the Constitution before its adoption. If the amendment is in conflict with a provision of the Constitution, the amendment must prevail.

Since the adoption of the Initiative and Referendum Amendment the General Assembly cannot enact a local law fixing the salaries of county officers, because this would be a local matter, which is prohibited by the constitutional amendment prohibiting local legislation by the General Assembly.

Since it has been repeatedly held by this court that, under the Amendment to the Constitution above referred to, the counties may initiate and adopt local laws, we

deem it unnecessary to review the cases or repeat what we have heretofore said.

The decree of the chancery court is reversed, and the cause dismissed.