PHILLIPS *v.* ROTHROCK.

4-4776

Opinion delivered November 8, 1937.

C. D. *Atkinson* and *G. T. Sullins,* for appellant.

J. W. *Trimble, Maupin Cummings, O. E. Williams* and *Earl N. Williams,* for appellees.

SMITH, J. Appellant brought suit as a citizen and taxpayer of Washington county against the public officials of that county to enjoin the disbursement of the public revenues of the county pursuant to the provisions of "Initiative Act No. 1 of Washington county, Arkansas." The suit questioned the existence of the act as valid legislation upon various grounds, and from a decree dismissing the suit is this appeal.

This decree was based upon the finding contained therein that "The suit was not filed within the time prescribed by law, and this court has no jurisdiction to hear and determine the questions."

Much testimony was heard upon the various allegations of the complaint, all of which has been incorporated in the transcript before us, but we shall review only so much thereof as is required to elucidate the questions upon which we base our decision. We will first consider the two grounds above stated upon which the action of the court was based.

The declaration that "The suit was not filed within the time prescribed by law" is based upon § 13 of act No. 4 of the Acts of 1935, p. 8. This act is entitled "An act to facilitate the exercise of the right of the initiative as to county acts and measures, and for other purposes." This act was passed pursuant to the direction of the initiative and referendum amendment to the Constitution that "General laws shall be enacted providing for the exercise of the initiative and referendum as to counties." Section 13 of this act provides that "The right to contest the returns and certification of the vote cast upon any proposed county act or measure is hereby expressly conferred upon any ten qualified electors and taxpayers of the county. Said contest shall be brought in the chancery court, and shall be conducted under statutes and procedure for contesting the election of county officers, except the complaint shall be filed within sixty days after the certification of said vote, and no bond shall be required of the contestants." The instant suit was not filed by ten electors and taxpayers of the county, and was not filed within sixty days after the certification of the vote upon the measure.

The provisions above quoted do not apply to this suit. It was not brought to contest the returns of the election, or the certification of the vote upon the proposed measure. It is conceded that a large majority was cast in favor of the measure and that the returns of this vote were properly certified. The objection made, among others, is that the submission of the question at the election was unauthorized under amendment No. 7 (the initiative and referendum amendment) and the enabling act No. 4, *supra,* passed pursuant thereto, and that act No. 1, therefore, did not become a law notwithstanding the favorable vote thereon.

That such suits are not election contests has been recognized in all the similar cases which have come before this court, and that any citizen and taxpayer may institute a proper suit to prevent unauthorized and illegal diversion of public funds is a proposition of law which this court has frequently announced, and the right of the individual citizen to be thus heard has always been enforced. Upon the right of the individual citizen to maintain such a suit the late case of *Beene* v. *Hutto,* 192 Ark. 848, 96 S. W. (2d) 485, is authoritative. That case states the existence of such a right to be beyond question. Innumerable other cases decided by this court are to the same effect. If the present suit is not such a suit as § 13 of act No. 4, *supra,* authorizes and limits as to time, then this time limitation does not apply. That it is not so regarded is concluded by the following cases which will be briefly discussed.

*Webb* v. *Adams,* 180 Ark. 713, 23 S. W. (2d) 617, was a suit brought in the Pike chancery court attacking the validity of a local law alleged to have been enacted by a majority vote of the citizens of that county. The election held in that county was not questioned. The contention was that the local act had not been enacted notwithstanding the majority vote favoring its adoption for the reason that the act of the General Assembly pursuant to which the election was held was void as being a local law. There were three opinions in that case, one the original majority opinion, another a majority opinion overruling a petition for rehearing. The third was a vigorous dissenting opinion, in which three justices concurred. But in none of these opinions was it suggested that the proceeding was one to contest an election.

In the case of *Tindall* v. *Searan,* 192 Ark. 173, 90 S. W. (2d) 476, suit was brought in the chancery court against the officers of Arkansas county for the purpose of having the salary act, affirmatively voted upon in that county, declared void and ineffective. Suit was brought by an individual citizen as a taxpayer, as was done in the instant case. The suit was not commenced until October 7, 1935, although the salary act had been voted upon at the election previously held November 6, 1934.

Other citizens later intervened in that case and the questions there raised touching the validity of the act were considered and decided by the presiding chancellor, and upon the appeal therefrom the decree of the chancery court holding the act invalid was reversed; but there was no suggestion in the exhaustive briefs filed in that case, or in the opinion of this court, which discussed the questions at length, that there was any lack of jurisdiction on the part of the chancery court, or that the suit was one to contest an election. See also *Coleman* v. *Sherrill*, 189 Ark. 843, 75 S. W. (2d) 248.

We conclude, therefore, that the instant case is not an election contest, but is one which any citizen and taxpayer may institute to prevent the alleged wrongful diversion of public funds, and that, therefore, the sixty-day limitation upon the right to contest the returns and certification of the vote does not apply, and further that the chancery court was not without jurisdiction to hear and determine the case.

The opinion in the case of *Hutto* v. *Rogers*, 191 Ark. 787, 88 S. W. (2d) 68, is not in contravention of this view. That was an election contest. The relief prayed was that the board of election commissioners be required to "count and certify all such votes (cast at the election), same as if the ballot title had in fact been printed on said ballots, that said proposed initiative act be declared duly adopted and enforceable." The relief prayed was denied for the reason stated in a headnote of that case that "Equity has no jurisdiction to try election contests." Here, as has been stated, there is no contest of the election itself. It was, also, decided in that case that the sufficiency of a petition for initiating local laws was a moot question after the election was held. The statement that after the question is submitted to and affirmatively voted upon by the people the sufficiency of the petition calling the election is of no importance was reaffirmed in the second appeal of the Faulkner county salary act case (*Beene* v. *Hutto,* 192 Ark. 848, 854, 96 S. W. (2d) 485), which is cited above upon another proposition. Upon the application of this statement to the instant case more will be presently said.

Appellant contends there is no authority in fact for the initiating of county salary acts. To put this question definitely at rest it may be said that the right of the qualified electors of any particular county to enact a salary act, applicable to that county, was expressly affirmed and the source of that authority was pointed out in the case of *Dozier* v. *Ragsdale,* 186 Ark. 654, 55 S. W. (2d) 779, and need not be repeated. It will suffice to say that we reaffirmed that holding in the cases of *Tindall* v. *Searan,* 192 Ark. 173, 90 S. W. (2d) 476, and *Reeves* v. *Smith,* 190 Ark. 213, 78 S. W. (2d) 72. Other cases recognizing the validity of local legislation relating to salary acts are: *County Board of Education* v. *Austin,* 169 Ark. 436, 276 S. W. 2; *Benton* v. *Thompson,* 187 Ark. 208, 58 S. W. (2d) 924; *Smith* v. *Cole* (and *Brown* v. *Pennix*), 187 Ark. 471, 61 S. W. (2d) 55; *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. (2d) 248; *Blocker* v. *Sewell,* 189 Ark. 924, 75 S. W. (2d) 658; *Hutto* v. *Rogers,* 191 Ark. 787, 88 S. W. (2d) 68; *Clay County* v. *Ruff,* 192 Ark. 150, 90 S. W. (2d) 474; *Beene* v. *Hutto,* 192 Ark. 848, 96 S. W. (2d) 485; *Priest* v. *Mack, ante* p. 788, 109 S. W. (2d) 665.

The chief insistence of appellant is that there was no legal authorization for the submission of the salary act to the electors, for the reason that the petitions praying that the election be held were not filed with the county court clerk within the time required by amendment No. 7. There appear to have been thirty-four petitions filed. One of these was filed September 22, 1936. Two were filed September 30, 1936. The others were filed October 1, 1936. The election was held November 3, 1936. It is, therefore, obvious that none of them was filed for as much as sixty days before the election. Amendment No. 7 provides that "General laws shall be enacted providing for the exercise of the initiative and referendum as to counties," but that "In municipalities and counties the time for filing the initiative petition shall not be fixed at less than sixty days nor more than ninety days before the election at which it is to be voted upon." Enabling act No. 4, *supra,* does not otherwise provide.

The amendment prescribes the time within which petitions for initiative measures must be filed. It is essen-

tial, therefore, to confer authority to hold an election upon an initiated county measure that the petitions therefor be filed not less than sixty nor more than ninety days before the election "at which it is to be voted upon." It would hardly be contended that an election could be held if there were no petitions therefor. It is mandatory that petitions should be filed, and it is equally so that they be filed not less than sixty days before the date of the election. Lacking this prerequisite there is no authority to hold the election upon the initiative measure, and no majority—however large—can adopt a measure which was submitted without constitutional authorization.

Although the county clerk, through his deputies, did receive and file the petitions on the days above stated, he appears thereafter to have ignored them and to have neglected or failed to comply with any of the duties enjoined by act No. 4, *supra*, and he wholly failed to give notice as provided by that act. No attempt was made by mandamus or otherwise to compel him to act. His inaction was ignored. He may have entertained the view that there was no authority for filing the petitions at the time they were deposited in his office.

In the case of *Townsend* v. *McDonald*, 184 Ark. 273, 42 S. W. (2d) 410, the Secretary of State took the position that petitions for a referendum upon an act of the General Assembly, which were tendered him for filing, did not conform to the requirements of amendment No. 7 and the enabling acts passed pursuant thereto. It was sought by mandamus to compel the Secretary of State to file the petitions. It was there held that the petitions presented to the Secretary of State did not comply with the requirements of the Constitution, and the writ of mandamus was denied for that reason. In other words, there was no authority for filing petitions which did not conform to the requirements of the Constitution. The opinion in this case of *Townsend* v. *McDonald, supra,* discussed the enabling acts which had been passed to make the constitutional amendment effective, and in holding the enabling acts mandatory said: "In determining whether the words of a statute shall have a mandatory or directory effect ascribed to them, the purposes of the act, the

end to be accomplished, the consequences that may result from one meaning or the other, and the context are to be considered. The statute relates to the limits of the power of the Secretary of State to file the petition, which was not in compliance with the requirements of the statute, and does not relate to the manner in which the power is to be exercised. *Phillips* v. *State,* 162 Ark. 541, 258 S. W. 403.''

That opinion further said that the enabling acts had not been passed as a mere matter of convenience or direction, but had been passed as a safeguard to the rights of the voters, and that ''This is a right of great benefit to the voters, and we do not think the requirement should be regarded as merely directory, but that it is a substantial right which is of a mandatory character, and must be complied with or the proceeding will be void.''

Here, the provisions of the amendment itself regarding the time within which petitions may be filed relate to the power of the clerk to receive petitions for filing, and he may, therefore, receive them within the time limited for that purpose, and not at a later time.

The case of *Texarkana Special School District* v. *Consolidated Special School District No. 2,* 185 Ark. 213, 46 S. W. (2d) 631, involved a petition addressed to the county board of education to change the boundaries of certain school districts. The applicable statutes were construed as requiring petitioners to give thirty days' notice of the intention to present the petitions before the meeting of the board. It was held that the notice must be given before the petitions were filed, and that posting the notice after filing and before the hearing did not give the board jurisdiction. The reason assigned for this holding was that the posting of the notice would apprise the electorate of the pendency of the proposal and would afford opportunity for investigation and discussion, as to whether the petitions should be signed.

The argument is made that the affirmative vote concludes all objections that could have been urged before the vote was taken. In support of this argument, cases are cited sustaining the text found in 9 R. C. L., page 1173, of the chapter on elections, that ''all provisions of

the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.''

We think this case comes not within the general rule stated, but within one or more of the exceptions thereto above stated.

The latest case cited in support of the above-stated contention is that of *Johnston* v. *Bramlett,* 193 Ark. 71, 97 S. W. (2d) 631, which quoted from the case of *Beene* v. *Hutto,* 192 Ark. 848, 96 S. W. (2d) 485, as follows: "It, therefore, appears that after a question is submitted to and voted upon by the people, the sufficiency of the petition is of no importance. It is not important because, whether sufficient or insufficient, if the measure is adopted by the people at the election, it becomes the law. The I. & R. amendment also provides that it shall be self-executing, and all of its provisions shall be treated as mandatory.''

It will be observed that the question put beyond review, after an affirmative vote has been had, is that of the sufficiency of the petition. This question has not been raised and is not involved in this litigation.

It is argued that, to hold the initiative act here under review was not adopted, notwithstanding the favorable vote thereon, is to place it in the power of officers having duties to perform in this behalf to defeat legislation by mere inaction. Several answers may be made to this contention.

It was said in the case of *Dozier* v. *Ragsdale,* 186 Ark. 654, 55 S. W. (2d) 779, that when any duty is required of a public officer, unless there is something to indicate the contrary, it will be presumed that he performed the duty according to law. The presumption is also that the officer will perform his official duty. The

enabling act (act No. 4) provides that the performance of duties enjoined may be enforced by mandamus. This enabling act further provides that if the county clerk, the board of election commissioners, or any election judge or clerk, "shall knowingly and wilfully fail or refuse to perform any such duty, he shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than $100 nor more than $500, and shall be removed from office."

The argument that wel should give conclusive effect to an affirmative vote, although neither the amendment itself nor the enabling act so provides, except only as to the sufficiency of the petition, for fear that a recalcitrant official might defeat the public will, may be met by other arguments equally as persuasive to the contrary.

For instance, it was held in the three cases affecting the Faulkner county salary act (*Hutto* v. *Rogers,* 191 Ark. 787, 88 S. W. (2d) 68; *Beene* v. *Hutto,* 192 Ark. 848, 96 S. W. (2d) 485, and *Benne* v. *Hutto, ante* p. 107, 105 S. W. (2d) 530) that electors might vote upon an act even though it had not been placed on the ballot when it should have been placed thereon, and that an affirmative vote would adopt the act although it had been omitted from the ballot. It may be said that three members of the court dissented from that view. Now, a majority of all the votes cast at the election is not an essential to the adoption of a law. A majority of those voting on the subject suffices. A single vote—if it were the only one—would be a majority. There is no limitation as to the number of acts which may be submitted at an election, nor is there any limitation as to the number of acts dealing with the same subject which may be submitted. The enabling act and the amendment itself contain provisions dealing with this very contingency. Stock laws appear to have primacy in the matter of number as to questions voted upon in these local elections.

It is undisputed that the county clerk did not publish the notice required by law, and if that was not essential here, it will not be in other cases. It is true there were news comments in three newspapers published in Washington county, and one of these gave what purported to

be a synopsis of the entire act. But newspaper reports are not always accurate, and this is not the publicity which the law requires. There might be an election in which there was not even news comment in the county papers, and that omission, or lack of information, would be unimportant, as it is not required. If filing petitions sixty days before the election is not mandatory, there is no reason why petitions might not be filed ten days before the election, or within even a shorter time. If the sixty-day provision does not govern and is not mandatory, there is no other provision as to the time of filing which does. It must, therefore, be apparent that, if the beneficent purposes of the amendment are to be realized and much expense and hopeless confusion avoided, there must be some uniformity and certainty in its administration. This *ad hominem* argument, just made, may be excused only by saying that it is in answer to another of similar character. The point decided in this case is that the failure to file petitions prior to a date, which is as much as sixty days before the election, renders the election nugatory.

The state of Oregon was a pioneer in I. & R. legislation, and we are accustomed to look to the decisions of the Supreme Court of that state for the proper construction of legislation which has been borrowed from it. The case of *Marsden* v. *Harlocker,* 48 Ore. 90, 85 Pac. 328, decided by the Supreme Court of Oregon, goes further than we are required to go to hold mandatory the provision that the petitions must be filed within the time required by the Constitution. That case involved the validity of a local act which had received an affirmative vote, and it was there held (to quote a portion of a headnote) that "it is the duty of the county court, and not the clerk, to inspect the petition for an election and examine its records to ascertain whether it complies with §§ 1, 12, 14 and, if so, to order an election, which order is a condition precedent to a valid election, and there was no valid election where the members of the court did not meet, nor assemble, and make the proper investigations, but merely signed a memorandum purporting to authorize an election." A reluctance to unduly extend this opinion pre-

vents a review of the reasoning by which that conclusion was reached.

The case of *Board of Greeley County Commissioners v. Davis, Auditor,* 99 Kans. 1, 160 Pac. 581, involved the validity of a local act which had received an affirmative vote. The Supreme Court of Kansas held that the petition calling for the election was insufficient, a question which our own amendment precludes after a favorable vote. But absent that provision, in the laws of the state of Kansas, the Supreme Court of that state said: "No such petition was submitted, consequently the statutory basis on which the county board called the election was wanting. The election was therefore called without lawful authority, and its result is void." It was there further said: "We have sought diligently, but without avail, to escape this conclusion," as the necessity of a petition meeting the statutory requirements was a condition precedent to calling the election.

Appellees dismiss the case of *Southern Cities Distributing Co.* v. *Carter,* 184 Ark. 4, originally published in 41 S. W. (2d) 1085, republished in 44 S. W. (2d) 362, with the statement that "This case, like others cited by appellant, is not in point." We agree with this statement, and might, for the reason stated by counsel for appellees, omit comment upon it were we certain that all others reading it would reach the same conclusion. We, therefore, distinguish it in so far as it may be thought applicable to the instant case. That case arose upon a petition for a referendum on a resolution of a city council relating to rates to be charged by a utility company. The resolution in question was passed by the city council on May 30, 1930. Petition for a referendum was filed June 27, 1930, which was within thirty days after the passage of the resolution. The I. & R. amendment provides "* * * for a referendum petition at not less than thirty (30) nor more than ninety (90) days after the passage of such measure by a municipal council." Justice KIRBY, speaking for the court, said: "This does not mean, of course, that the petition for a referendum cannot be filed less than 30 days after the passage of the measure sought to be referred, but only that the city must

allow at least 30 days after the passage of the measure for the filing of a referendum petition thereon, and cannot allow more than 90 days.''

The city clerk, with whom the petition was filed, was not called to pass upon, and did not pass upon, the petition until ''on the 31st day after the passage of the resolution as containing sufficient signatures of qualified electors to authorize the referendum, petitioned for.'' There, the petition remained and was on file on the 31st day after the passage of the resolution. It was there said: ''Although filed before the expiration of the 30 days allowed, they remained on file with the proper officer, who duly certified the sufficiency thereof after examination made on the 31st day from the passage of the resolution, and were therefore in all respects as valid and effective as though they had been filed on the 30th day thereafter. It may be that, after the signing of the petition, and before the expiration of the 30 days allowed for the filing thereof, any person who chose to do so could have insisted upon his signature being withdrawn therefrom; but where such petition was filed on time, and after its sufficiency was duly certified by the proper officer, any such signature could not be withdrawn as a matter of personal preference, nor without a sufficient showing that such signature had been fraudulently obtained. It then became a matter of public concern and part of the procedure necessary to invoke the referendum * * *.'' In other words, the petitioners did not lose control of the petition until thirty days after the passage of the resolution, and any signer who chose to do so could withdraw his signature therefrom, but if he did not do so before the thirty days expired he could not thereafter change his mind and withdraw his signature except upon a showing that it had been fraudulently obtained. The filing was then final, and was so regarded by the city clerk, who did not attempt to pass upon the petition until the 31st day after the passage of the resolution. The reason for so holding was that a petitioner might desire to withdraw his signature, a right he could not exercise after the filing had become final on the 31st day after the passage of the resolution. It appears, therefore, that the provision

of the amendment, as to time for filing petition, was not considered as directory merely, but was regarded as having been complied with.

The proposition there involved is the converse of the question here at issue. Here, the petitions were not filed with the county clerk until within less than sixty days of the date of the election, and could not, therefore, be treated as filed until they had actually been deposited with their legal custodian. It may be said, in passing, that in this case of *Southern Cities Distributing Co.* v. *Carter, supra,* a referendum was compelled by mandamus.

The General Assembly, by act No. 4, *supra,* passed an enabling act to facilitate the operation of the amendment, as the amendment directed should be done. It contemplated the possibility of a contest of the submission of an act, and provided the time and manner in which this should be conducted, and time was allowed therefor by giving as much as sixty days before the election. This time was given by requiring the petitions to be filed not less than sixty days before the election. The act provides that the clerk shall have ten days in which to pass upon the sufficiency of the petitions. If he finds them insufficient, he shall give the petitioners ten days in which to amend or correct them. Thereafter the clerk has five days in which to determine their sufficiency after amendment and correction. Thereafter, any taxpayer has fifteen days in which to attack the petitions in the chancery court, and the chancellor has ten days in which to call a term of court to hear the case. In the remaining ten days the court passes upon the questions raised, and the ballots are prepared if the court holds the petition sufficient. In the meantime the county clerk is required to "give notice by publication for two weeks in some weekly newspaper in the county of *bona fide* circulation therein, that such act or measure will be submitted to the people at said election for adoption or rejection," and it is required that the notice shall "include a full text of the act and the ballot title." Expedition in these matters is contemplated within the respective periods of time limited, and it is, therefore, provided that the "failure of the courts to decide prior to the election as to the sufficiency of any

such petition shall not prevent the question from being placed upon the ballot at the election named in such petition nor militate against the validity of such measure if it shall have been approved by vote of the people.''

It is, no doubt, true that cases may arise, and have arisen, in which the sufficiency of the petition may not be determined within sixty days after the petitions have been filed, in which event an affirmative vote adopts the act notwithstanding the fact that the petitions may have been insufficient.

This is not a case in which any presumption can be indulged to supply the omission to file the petitions not less than sixty days before the election. In this respect it is not unlike the case of *Booe* v. *Road Imp. Dist. No. 4 of Prairie County,* 141 Ark. 140, 216 S. W. 500. That case involved the validity of local acts passed at the special session of the General Assembly. The Constitution required—at the time when local bills might be passed by the General Assembly—that at least thirty days' notice be given of the intention to apply for passage of a bill of that character, and this provision was held to be mandatory. It has been consistently held, however, since the case of *Davis* v. *Gaines,* 48 Ark. 370, 3 S. W. 184, that a presumption should always be indulged in favor of the legality of legislative proceedings, and when the legislative records, of which the courts can take judicial notice, do not show to the contrary, the passage of a local act is conclusively presumed to have been in accordance with the constitutional requirement as to notice. On September 15, 1919, the Governor issued a proclamation calling the General Assembly to meet in extraordinary session on the 22nd day of September, 1919. The records of the General Assembly showed that it convened on that day and adjourned on the 1st day of October, 1919. At this extraordinary session local bills were passed, which were attacked as having been enacted without notice given as required by the Constitution. In defense of these acts it was insisted that the question, whether notice had been given, was one for the determination of the General Assembly itself, and that the passage of the acts concluded all inquiry into that subject, under the presumption that

960

the General Assembly had discharged its duty by ascertaining that the notice had been given. That contention was not sustained for the reason that it was a physical impossibility to have given thirty days' notice between the date of the proclamation convening the General Assembly in extraordinary session and the adjournment thereof.

So, here, the filing dates show the petitions were filed less than sixty days before the election and there can, therefore, be no presumption that the public had the notice of the proceeding which the Constitution contemplated and required. We conclude, therefore, that there was no authority for holding the election, and it is, therefore, a nullity.

The decree of the chancery court will, therefore, be reversed, and the cause will be remanded with directions to enter a decree in conformity with this opinion.

GRIFFIN SMITH, C. J., HUMPHREYS and MEHAFFY, JJ., dissent.

GRIFFIN SMITH, C. J., (dissenting). This suit was brought in the Washington chancery court by appellant as "A resident, qualified elector, taxpayer, and patron of the schools." By the suit it is sought to enjoin county officers from carrying into effect Washington County Initiated Act No. 1, certified by the election commissioners as having been adopted by a vote of 3664 to 660.

It is alleged in the complaint and urged in appellant's brief that the act as proposed did not come within the purview of Amendment No. 7 to the Constitution of Arkansas because of certain claimed irregularities attending its initiation, the charges being (1) that the petitions of voters were not filed a maximum of sixty days before the general election of November 3, 1936; (2) that the petitions actually filed were not examined by the county clerk nor their sufficiency certified; (3) that the text of the measure was not published; (4) that no record of the adopted act was ever made by the county clerk; (5) that the election commissioners wrongfully placed the proposed act on the official ballots, and (6) even though it should be held that the act was legally adopted, it is in many specified respects violative of the state Con-

stitution, and is in conflict with general laws to such an extent as to render impracticable its enforcement with respect to those sections which may not be fatally out of harmony with general laws and the Constitution.

The following points are raised by appellant:

(1) Section 2 of the initiated act directs that the county and probate judge shall receive a salary of $3,000 per annum, inclusive of compensation for his services as road commissioner, one-half of which shall be payable from the county general fund, and one-half from the county road or highway fund. Appellant says these provisions are contrary to act 133 of 1931 which fixes the salaries of all the county judges in the state. By said act 133 the salary of the county judge of Washington county is fixed at $2,000 per year. It is also alleged that effect of the initiated act is to misappropriate county road funds received from the state by virtue of act 65 of 1929, as amended by act 63 of 1931, and as further amended by act 48 of 1933, by virtue of which the so-called county turnback fund was created. Appellants refer to act 280 of 1935, which appropriated the sum of $1,000,000 as county turnback funds for each year of the biennium ending July 1, 1937, contending that application of any of this money to payment of a part of the salary of the Washington county judge constitutes an unlawful diversion.

(2) It is next insisted that § 5 of the initiated act is an effort to amend § 4587 of Crawford & Moses' Digest, now § 5673 of Pope's Digest. The digest sections refer to an act of the General Assembly of 1875 fixing fees of sheriffs throughout the state.

(3) Other alleged irregularities are: § 6, fixing the salary of the sheriff as $2,000 per year and mileage of 5 cents per circular miles; actual expenses while on official business out of the state, and the further sum of one-half of all other fees as provided for in § 5 thereof; also $1,500 for a deputy;

Section 7 of the initiated act, fixing the salary of the tax collector at 1½ per cent. of collections, and ½ of 1 per cent. of penalties and fees attaching upon nonpayment of personal and property taxes, and making it man-

datory that security of $50,000 be given by a bonding company; section 8, limiting the salary of the tax assessor to $1,800 per year, with a deputy at $600 per year, and providing that funds received from the state on account of the assessor's salary should be credited to the county salary fund; section 9, fixing compensation of the county treasurer at $1,800 per year, with provisions for a bond of $50,000 to be executed by a bonding company; section 9, prohibiting employment by county officers of deputies related to such officers within the fourth degree of affinity or consanguinity; sections 12 and 13, directing the circuit clerk and the chancery clerk to make ''flat'' charges of $5 for filing suits; section 14, directing all county officers whose salaries are fixed by the act (except those receiving no fees) to charge and collect for the use and benefit of the county the same fees, costs, commissions, bequests and compensation ''now or hereafter permitted by law to be charged by such officers for such services,'' and declaring all sums so earned to be a county fund; section 16, requiring county officers to keep public records as specified in the act and to make reports; section 18, allocating one-half of the net county salary fund (''except the *pro rata* proportions of the treasurer's and collector's offices taken from the school districts'') to be transferred to the common school fund for apportionment and the remaining one-half to be transferred to the county general fund. These sections, it is contended by appellant, are all in conflict with the Constitution or with general laws of the state.

It is urged that § 7 attempts to amend act 85 of 1927, as amended by act 198 of 1928; that § 8 violates act 330 of 1935, which sets up certain classifications by grouping counties and thereby fixing salaries [In this classification Washington county is in group 7, whereby the assessor's salary is fixed at $2,400 per annum, with an allowance of $600 per year for one deputy]; and that § 9 is violative of act 85 of 1927, as amended by act 198 of 1929, creating a state board charged with the duty of passing upon the sufficiency of the bonds of county officers. Also, it is argued that § 10 violates the following sections of Crawford & Moses' Digest: Section 1370, authorizing circuit

clerks to appoint deputies; § 1402, authorizing county clerks to appoint deputies; § 1910, authorizing county treasurers to appoint deputies; § 1952, relating to the duty of county courts' purchase of land upon which to erect houses of correction; and §.10027, authorizing collectors to appoint deputies; that § 12 attempts to amend § 4573, Crawford & Moses' Digest, as amended by act 157 of 1933, fixing the fees of clerks of circuit courts; that § 13 seeks to amend § 4575, Crawford & Moses' Digest, as amended by act 157 of 1933, fixing fees of chancery clerks; that § 16 seeks to amend §§ 4633 and 4639, Crawford & Moses' Digest, the former relating to the keeping of records, and the latter relating to incomes.

The chancellor found that the proceedings were in the nature of an election contest; that as such the complaint was not filed within the time prescribed by law, and should be dismissed. He further. found, however, that the requirement in § 2 that one-half of the salary of the county judge should be paid from the highway fund was void, and ordered such portion to be paid from the county general fund, or from the county salary fund.

The majority opinion quotes from *Beene* v. *Hutto*, 192 Ark. 848, 96 S. W. (2d) 485, where it was said: "It, therefore, appears that after a question has been submitted to and voted upon by the people, the sufficiency of the petition is of no importance. It is not important because, whether sufficient or insufficient, if the measure is adopted by the people at the election, it becomes the law. The I. & R. amendment also provides that it shall be self-executing, and all of its provisions shall be treated as mandatory." The opinion then contains this statement: "It will be observed that the question put beyond review after an affirmative vote has been had is that of the sufficiency of the petition. This question has not been raised, and is not involved in this litigation."

With this last sentence issue is taken. The majority opinion sets out the ground upon which the cause is reversed, saying: "This suit was not brought to contest the returns of the election or the certification of the vote upon the proposed measure. It is conceded that a large majority was cast in favor of the measure and that the

returns of this vote were properly certified. The objection made, among others, is that the submission of the question at the election was unauthorized * * * and that act No. 1, therefore, did not become a law, notwithstanding the favorable vote thereon."

The opinion then closes with this expression: "The filing dates show the petitions were filed less than sixty days before the election, and there can, therefore, be no presumption that the public had the notice of the proceedings as the Constitution contemplated and required. We conclude, therefore, that there was no authority for holding the election, and it is, therefore, a nullity."

Two propositions, and two only, are recognized in the majority opinion as authority for holding the act invalid: one, that the petitions were not filed within the time prescribed by law, and the other that there was not sufficient publication.

Admittedly the petitions, as filed, contained the requisite number of names of qualified voters. It is not insisted that the petitions would have been deficient if filed in a timely manner. There is no contention that the voters did not know what legislation was contemplated by the petitions, nor can it be said that there was any uncertainty as to the subject-matter. No complaint is made that publicity was not ample in so far as publicity related to the purpose to be served—that is, public information. It is only argued that there was a technical deviation from the letter of the law; and now, more than a year after submission of the issue and its adoption by a vote of 3,664 to 660—a majority of 3,004—the beneficent provisions of the act must be swept aside because of the conception that certain rights guaranteed under the Constitution, and by legislation enacted in aid thereof, have been denied.

But have these rights in fact been denied?

Amendment No. 7 to the Constitution provides that the sufficiency of a petition affecting county matters shall be decided in the first instance by the county clerk, subject to review by the chancery court, and "If the sufficiency of any petition is challenged, such cause shall be a preference cause and shall be tried at once, but failure

of the courts to decide prior to the election as to the sufficiency of any such petition shall not prevent the question from being placed upon the ballot at the election named in such petition, nor militate against the validity of such measure, if it shall have been approved by a vote of the people. * * * All measures submitted to a vote of the people by petition under the provisions of this section shall be published as is now, or hereafter may be provided by law.''

This amendment provides, also, that if the county clerk shall decide that any petition is insufficient, ''He shall without delay notify the sponsors of such petition.'' Act No. 4 of the General Assembly of 1935, fixes a penalty to which the county clerk is subject if he fails to perform his duties with respect to initiated petitions. It also provides that the county clerk shall, within ten days, examine initiated petitions, ''and if they are sufficient, he shall notify the election commissioners.'' It will be observed that the Constitution requires the clerk to immediately notify the sponsors of petitions if he finds them *insufficient,* while the legislative act provides that he shall notify the election commissioners if he finds them *sufficient.*

The record in the instant case does not show that the clerk, at any time, notified proponents of initiated act No. 1 that the petitions were insufficient. On the contrary, he seems to have ignored the entire transaction, both as to notification and as to publicity.

While it is true, as appellants contend, that amendment No. 7 contains a declaration that its provisions shall be treated as mandatory, it is equally true that the very situation with which we are now dealing was anticipated when the amendment was written, for the following wise provision was incorporated in the amendment: ''If the sufficiency of any petition is challenged * * * failure of the courts to decide prior to the election as to the sufficiency of such petition shall not * * * militate against the validity of such measure if it shall have been approved by the people.''

As far back as 1887—thirteen years after the Constitution of 1874 was adopted—this court held that ''the

voice of the people is not to be rejected for a defect or want of notice, if they have in truth been called upon and have spoken." *Wheat* v. *Smith,* 50 Ark. 266, 7 S. W. 161. In that case the appellee had been elected in a special election to the office of circuit clerk of Lafayette county, and his right to take office was questioned. The law provided that notice of such election should be published in a newspaper in the county, and this was not done. The opinion says: "When a special election to fill a vacancy is ordered there is no presumption that the voters know the date fixed by the writ of election, and they must be informed of it. But the established rule is that the particular form and manner pointed out by the statute for giving notice is not essential. Actual notice to the great body of voters is sufficient. The question in such case is, whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise, to change the result of the election. * * * If the law were otherwise it would always be in the power of a ministerial officer by his malfeasance to prevent a legal election. When the election is legally ordered, and the electors are actually apprised of the time and place appointed for holding it, the misfeasance or nonfeasance of the officer upon whom the statute devolves the duty of giving the election notice, cannot deprive the electors of the right to express their will through the ballots. * * * It does not appear that any one was misled or deprived of his privilege of voting his choice through ignorance of the date of the election. The number of votes cast is as great in proportion to the aggregate vote as that ordinarily polled at special elections. No evidence suggesting even that a different result might have been reached was offered. Elections are not to be lightly set aside, though the law has not been strictly complied with. It is of the utmost importance that the public should have confidence in the administration of the election laws, and to know that the will of the majority, when fairly expressed, will be respected."

One of the contentions made in *Hildreth* v. *Taylor,* 117 Ark. 465, 175 S. W. 40, was that proposed amendment No. 14 to the Constitution was not legally adopted,

the proof being that notice of submission had not been given by advertisement in newspapers as provided by statute. The existing law required that the secretary of state should cause to be published in one newspaper in each county * * * for thirty days a true copy of the title and text of each measure to be submitted.

In an opinion written by Chief Justice McCulloch, this court said: "It is conceded that the terms of the statute were not literally complied with in this instance; that the secretary of state did not mail out the copies for publication until May 25, 1914, and that only in two counties were the publications made before the first Monday in June, in the other counties the publication being from three to thirteen days late. * * * This court is committed to the rule, which is in accordance with the great weight of authority, that, so far as concerns election of officers, the failure to perform any duty, such as giving notice, does not deprive the electors of the right to choose their public officials. * * * A literal compliance is not required, and a failure to publish the notice within the time specified does not of itself prevent the people from adopting a measure at an election as specified in the Constitution. In order to defeat the submission, it must at least be shown that the omission to publish amounted to such a radical disregard of the requirements imposed by the legislature that it probably affected the result of the election. * * * It would be disastrous to hold that a statute or amendment to the Constitution could be defeated by showing that the publication in fact was not made in accordance with the specified terms."

In *Shephard* v. *McDonald*, 188 Ark. 124, 64 S. W. (2d) 559, it was said: "The action of the secretary of state in passing upon the sufficiency of a petition may be reviewed at any time, but if the sufficiency of such petition is being reviewed at the time the ballot is being prepared, the secretary of state shall place the measure on the ballot, and no subsequent decision shall invalidate such measure if it is at such election approved by a majority of the votes cast thereon. That is, no subsequent decision of the court reviewing the action of the secretary of state in passing upon the sufficiency of the petition

shall invalidate the measure. When approved by the electors, it becomes a law, subject to the same rules of construction and interpretation as an act of the legislature.'' The opinion further held that if it should be determined that the petition and ballot title are insufficient, the secretary of state could be restrained from certifying out to the election officials of the several counties of the state such defective ballot title.

In *Coleman* v. *Sherrill*, 189 Ark. 843, 75 S. W. (2d) 248, in considering an initiated county salary act, we said: ''The amendment provides for advertisement or publication—that 'all measures submitted to the vote of the people by petition under the provisions of this section shall be published as is now or hereafter may be provided by law.' But it was not intended that the officer to whom the petition was submitted should have entire or exclusive control of the petition, but remedies were provided whereby such petitions could be brought before the electors of the next general election. Having in mind these and other provisions of amendment No. 7, it becomes apparent that a liberal construction, or interpretation in order to make effectual the purposes intended, is required.''

*Hutto* v. *Rogers*, 191 Ark. 787, 88 S. W. (2d) 68, is in point. There it was held that the chancery court did not have jurisdiction to try a suit instituted after an election to determine whether a locally initiated measure relative to salaries of county officers had been legally adopted, ''since amendment No. 7 to the Constitution confers jurisdiction on the chancery court only to review the action of the county clerk in determining the sufficiency of a petition for initiating a local law.'' The court further said: ''It is true that it is alleged that the first certificate issued by the county clerk was valid and his second certificate was void. Had the latter certificate been challenged before the election, the chancery court would have had jurisdiction to review the action of the county clerk relative thereto. * * * The sufficiency of the petition was a moot question when the suit was filed.''

The same controversy involved in *Hutto* v. *Rogers*, referred to *supra*, was up for consideration in June, 1936,

in a cause entitled *Beene* v. *Hutto,* 192 Ark. 848, 96 S. W. (2d) 485. After quoting that part of amendment No. 7 which provides that failure of the court to decide prior to an election as to the sufficiency of any such petition shall not prevent the question from being placed on the ballot, nor militate against the validity of such measure if it shall have been approved by a vote of the people, this unequivocal declaration of the law is found:

"It, therefore, appears that after a question has been submitted to and voted upon by the people, the sufficiency of the petition is of no importance. It is not important because, whether sufficient or insufficient, if the measure is adopted by the people at the election, it becomes the law."

It is insisted, however, that sufficiency of the petition has not been raised, and is not involved in the litigation. With due respect to the view so expressed, I must plead my utter inability to comprehend how this can be said, when the result is a holding that the act is void because there was no authority for its submission. To reach this conclusion it is necessary to prove such lack of authority by a showing that the petitions were ineffectual because filed too late, and because the text of the act was not published on order of the county clerk.

There is a maxim in geometry that things equal to the same thing are equal to each other. It is pertinent to this discussion. If there were no authority for holding the election, as the majority opinion holds, the lack of authority arose through tardiness in filing the petitions, and through failure to publish the text of the initiated measure. That amendment No. 7 provides that after a proposed law has been voted upon and adopted by the people, petition irregularities are of no importance, and shall not militate against validity of the act, is not open to contradiction or further construction, under previous decisions of this court. In effect, the majority opinion holds that the words "sufficiency of the petition," as used in amendment No. 7, have reference only to the number of persons signing such petition, or the legal status of the signators; and that other vices, such as procrastination with respect to time of filing, or

irregularities in publication, do not go to the sufficiency of the petition, but are separate and distinct transactions which must be summarily dealt with in the sense that they are mandatory and cannot be cured by a purging at the polls. But the amendment in no sense distinguishes between irregularities which may be reached by mandamus or injunction before an election, but which, if ignored, may be sifted from other and more serious deficiencies and treated as directory, the omission to respect which would not render the adopted measure invalid.

The suggestion may be reasonably advanced that no such classification was made in the amendment, for the reason that "sufficiency of the petition" is a term broad enough to embrace all matters of irregularity susceptible of affecting the petition, such as the number of persons who subscribed thereto, the legal status of such signators, the time the petition was filed, action of the county clerk thereon, publication, and certification to the election commissioners. Any attempt by judicial interpretation to differentiate between these several transactions which, prior to adoption of a measure by vote of the people would have been conditions precedent and therefore mandatory, is foreclosed by former decisions of this court. Any argument that a petition filed by less than the requisite number of voters would be valid after a favorable submission, while an otherwise valid petition filed less than sixty days prior to an election would be a nullity, even though the measure should be overwhelmingly adopted, is obviously untenable. Such an involved and complicated theory would appeal only to minds so highly developed and so technically trained in word analysis and constitutional construction as to suggest the possibility that philosophy had been mistaken for logic to the utter annihilation of the latter.

The majority opinion correctly holds that the county salary act, if it had been submitted and adopted, would not be defective because of provisions in conflict with compensation laws passed by the General Assembly. That objection has been answered in other cases.

If there were any contention that the salary act voted on by the people of Washington county differed in any

material respect from the text of the measure as reflected by the petition, then there might be some ground for the objections urged by appellant. But that is not the case. If it had been charged that the people were taken unaware, and that by connivance and deceit a vicious law had been fraudulently foisted upon the county, the appellant would have been entitled to relief for the benefit of all taxpayers. But when a majority of more than three thousand voters show by their actions that they thoroughly understood the nature of the business in hand and so overwhelmingly enact a law designed to put the county on a cash basis by savings amounting to thousands of dollars annually, it is farcical to even suggest by way of courteous conversation that this is a suit to restrain the defendants as county officers from diverting public funds and exacting illegal fees. Rather, the suit should have been entitled, ''A legal move to defeat the will of the people of Washington county by destroying an economy measure and restoring extravagant and chaotic conditions heretofore existing, and in pursuance of such purpose to emasculate amendment No. 7.''

I am authorized to say that Justices HUMPHREYS and MEHAFFY agree to this dissenting opinion.